DAVID T. BRINEGAR ET AL., APPELLEES, V. JOHN E. COPASS, APPELLANT.

FILED OCTOBER 4, 1906. No. 14,416.

Waters. The overflow waters of a stream, especially where they run in a well-defined course and again unite with the stream at a lower point, must be regarded as a part of the watercourse from which the overflow comes and cannot be regarded or dealt with as surface water. *Chicago, B. & Q. R. Co. v. Emmert*, 53 Neb, 237, approved and followed.

19

APPEAL from the district court for Richardson county: WILLIAM H. KELLIGAR, JUDGE.  *Affirmed.*

*Reavis & Reavis,* for appellant.

*A. J. Weaver* and *E. Falloon, contra.*

DUFFIE, C.

John E. Copass, the appellant, owns 80 acres of land in Richardson county lying in the valley of the Nemaha river.   Brinegar, one of the appellees, owns the farm adjoining on the west.   The river runs through a portion of Brinegar's farm, and it also forms the south boundary line of the Copass land.   The river is subject to overflows, and at such times the flood waters run from Brinegar's land eastward upon and over the land of Copass.   Some four or five years prior to the commencement of this action, Brinegar and Copass built an embankment or dike on the bank of the river on the land of Brinegar for the purpose of preventing an overflow.   This dike was constructed at the joint expense of Brinegar and Copass, but, partly on account of complaint of adjoining landowners that the dike caused a serious overflow of their lands, and of threatened suits for damages, Brinegar determined to cut the dike, and, thereupon, Copass commenced the construction of an embankment along the west line of his land running from the river to the foothills.   This embankment was constructed wholly upon his own land and from dirt taken from the west side of the embankment, thus forming a ditch the whole length of the dike, which, Brinegar claims, has the effect of allowing the water of the river to enter the ditch and overflow a considerable area of his farm.   This action was brought by Brinegar to enjoin the construction of said dike and ditch, and Tiehen, who owns a large body of land on the opposite side of the river, intervened in the action, alleging that the effect of the dike would be to overflow about 320 acres of his best

land during times of high water, and he joined with the plaintiff in asking an injunction. A decree was entered by the district court requiring Brinegar to destroy the old dike or embankment that was erected by himself and Copass, and requiring Copass to destroy and tear down the embankment described in plaintiff's petition, and from this decree Copass has appealed.

In an able and exhaustive brief filed by the appellant it is argued that the overflow of waters of the stream are surface waters against which every proprietor has a right to protect himself and we are asked to review the case of *Chicago, B. & Q. R. Co. v. Emmert*, 53 Neb. 237, in which it was said: "The flood water of the Nemaha river involved in this case *held* not to be surface water, but a constituent part of such stream—a natural watercourse." The courts of the different states are apparently hopelessly divided upon the question of whether flood waters are a part of the stream from which the water finds its way to the adjoining lands to be dealt with as water of a running stream, or whether they are surface waters and subject to the rules applicable thereto. In the case cited the question was fully examined and the conclusion therein reached after elaborate argument by counsel and apparent careful consideration. We see no reason for departing from the rule of that case, and a quite exhaustive examination of the question convinces us that the courts which formerly held to the surface water theory are modifying or overruling their former decisions and getting in line with those that regard overflow waters as a part of the river itself. It is true that flood waters may become entirely separated from the stream and so have lost their identity with it. When it has spread over the adjoining country, settled in low places, and become stagnant, it can no longer be treated as a part of the stream, and the rules with respect to watercourses can then no longer be applied. But overflow waters from a natural stream in times of flood or freshet, flowing over or standing upon adjacent lowlands, do not cease to be part of the stream unless or until sep-

arated therefrom so as to prevent their return to its channel. 3 Farnham, Waters and Water Rights, sec. 879. In *Uhl v. Ohio River R. Co.,* 56 W. Va. 494, 68 L. R. A. 138, the supreme court of West Virginia made an elaborate examination of the authorities, and approved the rule announced in *Chicago, B. & Q. R. Co. v. Emmert, supra,* and Judge Baker, of the United States district court for the district of Indiana, refused to follow former decisions of the supreme court of that state, and, in an able opinion, held that the flow of a river, when swollen beyond the low water mark by the hard rains which fall in wet seasons, or by the melting of snows, does not constitute surface water which may be turned by embankments. *Cairo, V. & C. R. Co. v. Brevoort,* 62 Fed. 129, 25 L. R. A. 527. In a late case, *Fordham v. Northern P. R. Co.,* 66 L. R. A. 556 (30 Mont. 421), the supreme court of Montana reviews the cases upon the subject and announces the following rule: "Flood water of a river which forms a continuous body with the water flowing in the ordinary channel, or which has departed from the channel presently to return, must be regarded as a part of the stream in considering the right to obstruct its flow." The evidence in this case establishes, we think, without any controversy, that the waters of the Nemaha river, in times of freshet, flow across the Copass land and empty into the Nemaha river again about a mile distant therefrom. This, we think, under all the authorities, constitutes such overflow a constituent part of the stream, and we have been cited to no authority, nor have we, in our search, been able to find a case holding that overflow water, which leaves the ordinary bank of the stream in times of freshet, again joining the stream at a lower point thereon, is regarded or held to be surface water. The holding of the district court was undoubtedly right, and we recommend an affirmance of the decree.

ALBERT and JACKSON, CC., concur,

By the Court:  For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.